1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAN LASHLEY; JERRY LASHLEY,                     No. C 05-03288 WHA

        Plaintiff,

  v.                                                              **ORDER DENYING MOTION FOR**
                                                                    **SUMMARY JUDGMENT**
THE UNITED STATES OF AMERICA,

        Defendant.

_____/

## INTRODUCTION

In this tort action, plaintiffs bring suit against the United States for injuries suffered while they were in the Golden Gate National Recreational Area ("GGNRA") in Marin County, California. The United States moves for summary judgment contending that this Court lacks jurisdiction to entertain plaintiffs' claims pursuant to the Federal Tort Claims Act. The United States also contends that the California recreational-use statute bars plaintiff Jan Lashley's claim. Because this order finds that the discretionary-function exception to the FTCA does not apply to the conduct alleged in this case, and California's recreational-use statute does not bar plaintiffs' claims as a matter of law, the motion for summary judgment is **DENIED.**

## STATEMENT

Plaintiffs in this case, Jan Lashley and Jerry Lashley, are Ohio residents and a married couple (Compl. at 2). In October 2004, they visited the Golden Gate National Recreation Area in Marin County, California. While there, they went to Battery Mendell, a seacoast fortification used by the Army in the early 1900s (Saeltzer Exh. 5 at 10, 40). Plaintiffs walked up two

**United States District Court**
For the Northern District of California

1  flights of wooden stairs in the battery (*id.* at 40).  One side of the second set of stairs adjoined a

2  wall of the battery.  The other side of the stairs was unprotected — it did not adjoin a wall, nor

3  was a handrail attached (*id.* at 43).  As Mrs. Lashley descended the second staircase, she fell

4  over the unprotected edge onto the concrete floor of the battery (*id.* at 56).

5       Mrs. Lashley broke both her wrists, scraped her face, and hit her head on the floor (*id.* at

6  69).  She underwent surgery on her wrists at Marin General Hospital, where she stayed for two

7  days (Saeltzer Exh. 4 at 61).  She returned to the hospital ten days later for additional surgery

8  (*ibid.*).  When she returned to Ohio, she went through two months of physical therapy (Saeltzer

9  Exh. 5 at 111).  Mrs. Lashley alleged that the United States negligently failed to guard against

10 the hazard and warn of the dangerous stairway (Compl. ¶¶ 2-10).  Mr. Lashley claimed the loss

11 of consortium of his wife (*id.* at ¶¶ 12-14).

## ANALYSIS

13       Under Rule 56, summary judgment is proper where the evidence shows that "there is no

14 genuine issue as to any material fact and that the moving party is entitled to judgment as a

15 matter of law."  It is not the task of the district court to scour the record in search of a genuine

16 issue of triable fact.  The nonmoving party has the burden of identifying with reasonable

17 particularity the evidence that precludes summary judgment.  *Keenan v. Allen*, 91 F.3d 1275,

18 1279 (9th Cir. 1996).  A genuine dispute as to a material fact exists if there is sufficient

19 evidence for a reasonable finder of fact to return a verdict for the nonmoving party.  On

20 summary judgment, the "evidence of the non-movant is to be believed, and all justifiable

21 inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

22 255 (1986).

23       **1.    THE DISCRETIONARY-FUNCTION EXCEPTION.**

24       The FTCA is a limited waiver of the United States' sovereign immunity.  It covers tort

25 claims arising out of the conduct of a government employee acting within the scope of his or

26 her employment.  28 U.S.C. 1346(b).  That waiver, however, is limited by several exceptions.

27 One is the "discretionary-function" exception, which precludes liability under the FTCA for

28 claims "based upon the exercise or performance or failure to exercise or perform a discretionary

2

**United States District Court**
For the Northern District of California

1    function or duty on the part of a federal agency or an employee of the Government, whether or

2    not the discretion involved be abused." 28 U.S.C. 2680(a).  The discretionary-function

3    exception is designed to "prevent judicial second-guessing of legislative and administrative

4    decisions grounded in social, economic, and political policy." *GATX/Airlog Co. v. United*

5    *States*, 286 F.3d 1168, 1173 (9th Cir. 2002).  The United States bears the burden of proving that

6    the discretionary-function exception applies.  If the exception applies, a district court has no

7    subject-matter jurisdiction over the case.  *Id.* at 1173-74.

8            In *Berkovitz v. United States*, 486 U.S. 531 (1988), the Supreme Court created a two-

9    part test that governs the application of the discretionary-function exception.  In the first step,

10   the challenged conduct must involve an "element of judgment or choice." *GATX/Airlog Co.*,

11   286 F.3d at 1173-74.  Thus, conduct that violates a mandatory directive is not discretionary.  If,

12   however, the conduct involves choice or discretion, the analysis proceeds to the second step to

13   determine "whether that judgment is of the kind that the discretionary function exception was

14   designed to shield." *Berkovitz*, 486 U.S. at 536.  The focus is on "the nature of the actions taken

15   and on whether they are susceptible to policy analysis." *GATX/Airlog Co.*, 286 F.3d at 1174.

16   The decision "need not *actually* be grounded in policy considerations so long as it is, by its

17   nature, susceptible to a policy analysis."  When a statute or regulation allows a federal

18   employee to act with discretion, "it must be presumed that the agent's acts are grounded in

19   policy when exercising that discretion."

20           This order first addresses whether the discretionary-function exception covers the

21   National Park Service's failure to install a handrail along the wooden stairs at issue.  Then, the

22   order considers the discretionary-function exception with respect to the Park Service's failure to

23   put up signs warning of the danger of the stairs.

24                       **A.    Failure to Install a Handrail.**

25           Regarding the failure to install a handrail along the staircase, the first prong of the test is

26   satisfied.  Under the National Park Service Organic Act, 16 U.S.C. 1, the Park Service has a

27   broad duty to "promote and regulate . . . national parks, monuments, and reservations . . . by

28   such means and measures as conform to [their] fundamental purpose," which "is to conserve the

United States District Court
For the Northern District of California

1    scenery and the natural and historic objects and the wildlife therein and to provide for the

2    enjoyment of the same in such manner and by such means as will leave them unimpaired for the

3    enjoyment of future generations." More specific to this case, the National Park Service has a

4    186-page Seacoast Fortifications Preservation Manual for the GGNRA (Haller Exh. D). The

5    manual specifically addresses the need for handrails at some of the coastal batteries (*id.* at 120-

6    21). It explicitly leaves decisions regarding handrails to the discretion of the Park Service

7    officials: "The pervasive concern over handrails effectively weights safety against the

8    compromise of essential resource character, and must be most judiciously reviewed before

9    taking action" (*ibid.*). There is no statute or regulation that "specifically prescribes a course of

10   action for an employee to follow" when he or she decides in favor of or against installing a

11   handrail. *Berkovitz*, 486 U.S. at 536. Accordingly, because the decision to install a handrail

12   involves an "element of judgment or choice," the first prong of the test is satisfied.

13   *GATX/Airlog Co.*, 286 F.3d at 1174.

14        The central issue is whether the second prong of the test applies. This step requires

15   consideration of whether the action taken is "susceptible to a policy analysis." The United

16   States contends that "[t]he Park Service's decisions regarding how to preserve historic sites

17   necessarily involve an element of policy judgment" (Br. at 9). To that extent, this order agrees.

18   Park Service regulations require the preservation of the "historic character of a property," to

19   "maximize[] the retention of distinctive materials, features, spaces and spacial relationships."

20   36 C.F.R. 68.3 (a)(1) and (2). Furthermore the Park Service's Cultural Resource Management

21   Guideline provides that "[t]he protection of people and the protection of resources are the

22   primary concerns of park management" (Scott Exh. A at USA 1112). Furthermore, resolution

23   of conflicts between the two concerns "should avoid actions compromising the integrity of

24   cultural resources and their settings" (*ibid.*). It is clear that when Park Service officials consider

25   implementing safety measures, they must consider the public's interest in preserving the

26   character of historic structures.

27        Plaintiffs concede that the discretionary-function exception immunizes policy decisions

28   based on historical considerations (Opp. 9). Plaintiffs, however, make two arguments in

4

United States District Court
For the Northern District of California

1    opposition. *First*, they contend that the discretionary-function exception requires that a

2    government official make an *actual* decision, and that the officials here never made an actual

3    decision not to install a handrail. *Second*, plaintiffs contend that because the officials here did

4    not know that the staircase was a historic part of Battery Mendell, the challenged conduct here

5    is not immune under the discretionary-function exception. This order finds that, taken together,

6    plaintiffs' contentions have merit.

7         Battery Mendell is an historic structure. In 2000 and 2001, Stephen Haller and Michael

8    Scott, two Park Service employees, visited Battery Mendell as part of a survey of the batteries

9    at GGNRA (Haller Decl. ¶¶ 8-9). Scott made a number of observations on a "Coast Defense

10   Resource Checklist," including a note about the wooden staircase at issue here (*id.* at ¶¶ 9-11;

11   Haller Exh. C at USA0640). Scott made a notation to "Install handrail on wood stair" (Haller

12   Exh. C at USA 0639; Lee Exh. F at 75). At a deposition, Haller could not recall ever discussing

13   the lack of a handrail or making a specific decision not to install handrails (*ibid.*). Haller

14   explains that he "agreed with Mr. Scott's observation that the lack of a handrail was a safety

15   hazard" but did not recommend installing a handrail "because it was a minor safety hazard in

16   relation to the potential failure of overhead concrete gun platforms, or a large crack near the

17   cliff edge" (Haller Decl. ¶ 16). Haller also testified that he had "every reason to concur" in

18   Scott's opinion that the staircase was not historic at the time they performed their surveys,

19   because it was "atypical" (Saeltzer Exh. 2 at 72).

20        *After* Mrs. Lashley's accident and the initiation of this lawsuit, Haller later determined

21   that his initial assessment was incorrect — the wooden staircase was historic (Haller Decl. at ¶¶

22   18-19). Photographs dating as far back as 1921 showed the same wooden staircase at Battery

23   Mendell, without a handrail (*ibid.*; Haller Exh. G). Based on the archival photographs, Haller

24   could determine that the staircase at issue was historic and "in the same design and location as

25   the Army used when Battery Mendell was in active service" (Haller Decl. at ¶ 19). In his

26   declaration, Haller now explains that because the staircase did not historically have a handrail,

27   that weighs against adding a handrail to the staircase today (*ibid.*). Plaintiffs note that in one

28   photograph from 1996, a handrail on the staircase is visible (Saeltzer Exh. 1-C).

United States District Court

For the Northern District of California

1    As stated at the hearing, the Court has had trouble reconciling the key Ninth Circuit

2    decisions on this point.  Notwithstanding the lack of clarity, that Haller could not recall making

3    a decision not to install a handrail *and* that he originally believed the staircase to be non-historic

4    are dispositive on this motion.

5    Plaintiffs contend that the discretionary-function exception requires an "actual

6    decision."  According to plaintiffs, "[i]f the rule were that the United States enjoyed protection

7    for all its inaction simply because social, economic, or political policy decisions, if made, would

8    have decided on inaction, Congress's basic purpose for the discretionary function would

9    evaporate: there would be no decision to second-guess" (Opp. 6).  Plaintiffs contend that they

10   find support for an actual-decision requirement in *Summers v. United States*, 905 F.2d 1212 (9th

11   Cir. 1990), and *Oberson v. United States*, 441 F.3d 703 (9th Cir. 2006).  In *Summers*, the

12   plaintiff was a four-year-old girl walking with her family along a beach in the GGNRA.  She

13   attempted to balance while barefoot on a rock, which was part of a fire ring.  She lost her

14   balance and burned her foot on hot embers in the fire ring.  The plaintiff filed suit and

15   contended that the Park Service had failed to warn of the hazard.  The Ninth Circuit determined

16   that the discretionary-function exception did not apply because there was "no evidence . . . that

17   [the Park Service's] failure to post warnings of the sort that would have prevented [the

18   plaintiff's] injury was the result of a decision reflecting the competing considerations of the

19   [Park] Service's sign policy."  *Summers*, 905 F.2d at 1213-15.  In *Oberson*, the Forest Service

20   had raised the speed limit on a snowmobile trail to 45 mph.  The Forest Service had not,

21   however, properly used its warranting process, which was "conducted at a route design speed of

22   35 mph and did not identify the hill as a hazard."  The Ninth Circuit held:

23           Undoubtedly, [the Forest Service's] decision whether to warrant
             trails is protected, as is its decision to adopt a 45 mph speed limit.
24           But not having warranted the trails at 45 mph, the Service cannot
             claim that its failure to warn of hazardous conditions at that speed
25           is protected by the discretionary function exception.

26   The *Oberson* court found dispositive that the Park Service "offer[ed] no evidence to show that

27   its failure to post a warning was the result of a policy decision."  *Oberson*, 441 F.3d at 710-11.

28

United States District Court

For the Northern District of California

1       Despite *Oberson* and *Summers*, which seem to require that the government prove that an

2  actual policy-based decision was made, the United States also cites relevant authority.  The

3  United States notes that Ninth Circuit has expressly rejected the "argument that the

4  discretionary function exception cannot apply in the absence of a conscious decision."

5  *Kennewick Irrigation District v. United States*, 880 F.2d 1018, 1028 (9th Cir. 1989) (quoting *In*

6  *re Consolidated United States Atmospheric Testing Litigation*, 820 F.2d 982, 998-99 (9th Cir.

7  1987)).  The Ninth Circuit explained the problem that requiring an actual decision would create:

8  such an "interpretation of the statute would create insurmountable problems in its

9  administration: What would constitute a 'decision'?  Would a decision to defer be a

10  'decision'?"  The *Kennewick* court noted that "the relevant question is not whether an explicit

11  balancing is proved, but whether the decision is susceptible to policy analysis."  *Id.* (quoting

12  *United States Fidelity & Guaranty Co. v. United States*, 837 F.2d 116, 120-21 (3d Cir. 1988)).

13       Thus, the Ninth Circuit authority tends to point both ways as to whether an actual

14  policy-based decision is necessary to invoke the discretionary-function exception.  This order

15  finds that the authorities can be reconciled.  In *Oberson* and *Summers*, the Ninth Circuit focused

16  on the fact that there was *no* evidence, nor any suggestion, that the governmental decisions were

17  the products of policy considerations.  Thus, "[i]n the absence of any evidence that the failure to

18  post a warning or remedy the hazard was the product of a policy choice, . . . the discretionary

19  function exception did not shield the [government] from liability."  *Oberson*, 441 F.3d at 712.

20  The instant case falls under the *Oberson* rubric.  Here, not only is there an "absence of any

21  evidence" that failing to install a handrail was the product of a policy choice, there is evidence

22  that the Park Service's failure *could not have been* the product of a policy choice — Haller

23  conceded that before Ms. Lashey's fall, he believed that the staircase was not historic (Lee Exh.

24  F at 90-91).  Furthermore, Haller made no actual decision not to install a handrail.  Even if he

25  had made a conscious decision, however, there is evidence proving that any decision he might

26  have made with respect to the staircase would not have been based on consideration of the

27  staircase's historic status.

28

United States District Court

For the Northern District of California

1    While no "conscious decision" is necessary to invoke the discretionary-function

2    exception under *Kennewick*, it cannot be said that the decision here was even "susceptible" to a

3    policy decision.  Where the evidence conclusively shows the absence of even the possibility of

4    a policy judgment, such conduct is not the type "that the discretionary function exception was

5    designed to shield."  *Berkovitz*, 486 U.S. at 536.  If the discretionary-function exception applied

6    in this instance, the Park Service could abuse the exception by *later* designating structures to be

7    historic *after the fact*.  That would be contrary to the purpose of the discretionary-function

8    exception.

9                    **B.       Failure to Install a Warning Sign.**

10    This order next discusses whether the discretionary-function exception should apply to

11    the Park Service's failure to put up any warning signs near the staircase.  Park Service officials

12    exercise their discretion when they decide whether to warn of potential hazards on Park Service

13    property.  The Park Service's Sign Manual provides that "the individual park manager . . . has

14    the responsibility for determining whether or not a sign is necessary or appropriate at a given

15    location" (Fake Exh. at NPS00275).  The manual goes on to note that it is "important . . . that

16    such decisions bear in mind long standing [Park Service] policy to minimally intrude upon the

17    natural or historic setting in National Park System areas, and to avoid an unnecessary

18    proliferation of signs, while striving to ensure for the safety of park visitors" (*ibid.*).

19    Here, the first prong of the discretionary-function exception analysis is met because

20    "[w]hile the said policy guidelines certainly outline general policy goals regarding visitor

21    safety, the means by which [Park Service] employees meet these goals necessarily involves an

22    exercise of discretion."  *Valdez v. United States*, 56 F.3d 1177, 1180 (9th Cir. 1995).

23    As for the second prong, the Park Service knew of the hazard posed by the staircase.  On

24    Scott's written report about Battery Mendell, he noted that the staircase at issue posed a danger,

25    noting that the Park Service should "Install handrail on wood stair" (Haller Exh. C at USA

26    0639; Lee Exh. F at 75).  This order finds the relevant Ninth Circuit authority clear on the issue

27    of warning signs.  "A decision not to warn of a specific, known hazard for which the acting

28    agency is responsible is not the kind of broader social, economic or political policy decision that

the discretionary function exception is intended to protect." *Sutton v. Earles*, 26 F.3d 903, 910

(9th Cir. 1994).

This case is analogous to *Summers*, where the Park Service had a "dual mission of

promoting public use of the national parks while preserving them for the enjoyment of future

generations."  In *Summers*, there was "no evidence . . . that the [Park Service's] failure to post

warnings of the sort that would have prevented [the child's] injury was the result of a decision

reflecting the competing considerations of the Service's sign policy." *Summers*, 905 F.2d at

1215.  Likewise, in this case, there is no evidence that failing to post a warning sign regarding

the hazard posed by the staircase was the result of the Park Service's policy goal of preserving

historic structures.  Indeed, Scott testified that he "never even considered" posting a sign

warning of the danger.  (Saeltzer Exh. 3 at 65).  The Park Service's failure to warn of the danger

posed by the staircase is not protected by the discretionary-function exception.

**2.    CALIFORNIA'S RECREATIONAL-USE STATUTE.**

The United States next contends that if the discretionary-function exception to the

FTCA does not apply, the government is shielded from liability under California's recreational-

use statute.  The recreational-use statute applies to the Park Service's ownership of Battery

Mendell because, as a federal landowner, the FTCA provides that the Park Service's liability is

"in the same manner and to the same extent as a private individual under like circumstances."

28 U.S.C. 2674.  California's recreational-use statute provides:

> An owner of any estate or any other interest in real property,
> whether possessory or nonpossessory, owes no duty of care to keep
> the premises safe for entry or use by others for any recreational
> purpose or to give any warning of hazardous conditions, uses of,
> structures, or activities on such premises to persons entering for
> such purpose, except as provided in this section.

Cal. Civ. Code 846.  Section 846 goes on to list three exceptions to the statute: (1) where the

landowner's conduct constituted "willful or malicious failure to guard or warn against a

dangerous condition, use, structure or activity"; (2) where entry to the land has been granted

for a consideration, or if consideration has been received by others for the same purpose; or (3)

where the landowner has expressly invited, rather than merely permitted, the injured party onto

the premises.  Plaintiffs do not contend that either the second or third exception to the statute

applies — they neither paid to enter the battery, nor were they expressly invited onto the property.

The parties' dispute regarding the application of Section 846 is whether the Park Service willfully or maliciously failed to guard or warn against the dangerous condition. If the Park Service was neither willful nor malicious, the recreational-use statute would bar plaintiffs' claims here. If, however, the United States can prove that the officials neither maliciously nor willfully failed to warn or protect against the hazard, the United States will be entitled to summary judgment. This order finds that this determination raises genuine issues of material fact, and that the recreational-use statute does not bar plaintiffs' claims as a matter of law.

The Ninth Circuit has recognized that "[t]he California Court of Appeal[] has set out three essential elements that must be present before a landowner's actions become wilful misconduct: (1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril." *Spires v. United States*, 805 F.2d 832, 834 (9th Cir. 1986). The United States concedes that the Park Service was "aware of the wooden staircase and the absence of a handrail before the incident" (Br. 14). The parties disagree, however, regarding (1) whether the Park Service had actual or constructive knowledge that a potential injury from the staircase was probable, and (2) whether the Park Service consciously failed to act to prevent the injury.

Whether the Park Service knew or should have known of a probable injury — rather than only a possible injury — created by the staircase is a question of material fact. The United States contends that because there were no prior accidents on the staircase at Battery Mendell, it was not probable that a person would be injured on the staircase. The United States cites *Mattice v. United States*, 969 F.2d 818, 823 (9th Cir. 1992), in support. In *Mattice*, the plaintiff was injured when she drove off a national park road and dropped 350 feet to the beach below. The Ninth Circuit held that proof of nine prior accidents on the road did not establish that the government should have known that the particular stretch of road was dangerous. Of

10

the prior accidents, "[n]one . . . occurred near the overlook.  Moreover, [the plaintiff had] not shown any pattern at all from the accidents other than that they were on [the road]."  *Id.* at 819, 823.

The United States' improperly relies on *Mattice* to support its contention that proof of prior accidents is required to show that there was a probability of injury.  The *Mattice* court focused on the prior accidents' lack of similarity to the plaintiff's injury.  That there were no prior accidents on the staircase does not factor into the analysis.  Indeed, "California courts have frequently rejected such reasoning, noting that the matter of probability is not to be assessed solely by the number of prior accidents, which adventitiously may have been few, but by all the circumstances."  *Termini v. United States*, 963 F. 2d 1264 (9th Cir. 1992).

With respect to the probability of an accident at Battery Mendell, plaintiffs note that the area around the battery often receives over a thousand visitors on a clear day (McFarland Decl. at ¶ 5).  Furthermore, Haller explained that the Park Service knew that the Yosemite Institute and the Point Bonita YMCA have programs that regularly take school children to Battery Mendell (Saeltzer Exh. 2 at 56-57).  Here, where the Park Service knew of the potential for injury in a heavily-visited historic structure, the likelihood of injury might have been "probable," rather than merely "possible."  Determining whether that likelihood was probable or only possible is a question of fact inappropriate for resolution at summary judgment.

Finally, the United States contends that the record proves that the Park Service did not commit a "conscious failure to act to avoid the peril."  The United States contends that, in order to find that a conscious or willful failure occurred, there must have been a failure to protect against or warn of a "hidden peril" (Reply Br. 14).  The United States cites as support *Miller v. United States*, 945 F.2d 1464 (9th Cir. 1991), and *Rost v. United States*, 803 F.2d 448, 451 (9th Cir. 1986), cases in which a conscious failure to act was found where the danger was hidden from the victims.

*Miller* and *Rost* do not, as the United States suggests, imply that a hidden danger is *necessary* to a find that a defendant acted wilfully when it failed to warn or protect against a harm.  It cannot be that a landowner is immune from liability when he or she has made a

1  conscious decision not to warn of a danger, even if that danger is not completely hidden.

2  Regardless, "[w]hen willfulness is an issue, summary judgment should be granted with

3  caution, since questions such as intent or motive are presented." *Simpson v. United States*, 652

4  F.2d 831, 834 (9th Cir. 1981), *abrogated on other grounds by Ravell v. United States*, 22 F.3d

5  960, 963 (9th Cir. 1994). In this case, at least one Park Service official, Scott, knew of the

6  danger presented by the staircase and recommended that a handrail be installed (Haller Decl. ¶

7  16). Haller explained in his deposition that he had reviewed Scott's recommendations (*ibid.*).

8  Thus, drawing all inferences in plaintiffs' favor, the facts suggest that Haller consciously

9  decided not to install a handrail or post a sign. As the Ninth Circuit has stated, "[w]hether the

10  efforts of the United States were so feeble as to rise to the level of willfulness is a material

11  issue of fact which should . . . prevent[] summary judgment." *Simpson*, 652 F.2d at 834.

12  Accordingly, this order finds that summary judgment for the United States is inappropriate

13  based on the California recreational-use statute.

14  **CONCLUSION**

15  For the foregoing reasons, this order finds that the discretionary-function exception to

16  the FTCA waiver of sovereign immunity does not apply to the Park Service's failure to post a

17  warning sign or install a handrail. Nor does California's recreational-use statute bar plaintiffs'

18  claims. Accordingly, the United States' motion for summary judgment is **DENIED**.

19  Finally, the United States moves to strike the declaration of Thomas A. Jennings. To

20  the extent that declaration is objectionable, this order does not rely on it.

21  **IT IS SO ORDERED.**

22

23  Dated:  September 26, 2006

24  WILLIAM ALSUP
   UNITED STATES DISTRICT JUDGE

25

26

27

28